UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ORIX FINANCIAL SERVICES,

                   Plaintiff,

                                         91 Cv. 2523 (RPP)

               - against -                  **OPINION AND ORDER**

BARBARA PHIPPS,

                   Defendant.
--------------------------------------------------------X

On August 26, 2008, Defendant Barbara Phipps filed a motion for "Relief from Judgment" under Rule 60(b)(4), requesting that the Court vacate the default judgment entered against her on September 3, 1991.  Oral argument on Defendant's motion was heard by this Court on December 5, 2008.  For the following reasons, Defendant's motion is denied.

**1. Summary of the Proceedings**

This action commenced on April 9, 1991, when Plaintiff filed its Complaint ("Compl.") against the moving Defendant to recover the balance due under notes issued to Plaintiff and Guaranteed by Defendant.  The Complaint alleged that on December 10, 1988, Defendant's husband (Clarence Wayne Phipps), and Stanley Fleming, his business partner (together, the "Obligors"), contracted with General GMC-Kenworth ("Kenworth") to purchase on credit a tractor worth approximately $85,000.  (Compl. ¶ 4; Compl. Ex. A [sales contract].)  Kenworth assigned this debt to Plaintiff.  (Compl. ¶ 6; Compl. Ex. C [assignment]).  That same day, Defendant allegedly executed a Guaranty

for all of the obligations of her husband to Plaintiff, both those then existing and those thereafter incurred.  (Compl. ¶ 7; Compl. Ex. D [Guaranty]).

The Guaranty appointed C-A Credit as Defendant's agent for any service of process, and Defendant's address, which was typed underneath her alleged signature, was listed as "337 Marla Drive, Cohutta, GA 30710."  (Compl. ¶ 7; Compl. Ex. D.)  In April and June of 1989, the Obligors purchased two more tractors from Kenworth on credit for approximately $45,000, and again, this debt was assigned to Plaintiff.  (Compl. ¶¶ 14, 21; Compl. Exs. F, I [sales contracts].)  In June 1990, the Obligors defaulted on their debt, and on August 23, 1990, the Obligors filed for bankruptcy in the Northern District of Georgia.  (Compl. ¶¶ 9-10, 17, 24.)

On April 9, 1991, Plaintiff filed a Complaint in this Court against Defendant to recover the unpaid balance due (approximately $166,000) under the terms of the Guaranty.  (Compl. ¶¶ 12, 19, 26.)  Defendant did not file a response to the Complaint, and on July 11, 1991, Plaintiff moved for a default judgment ("Default Judgment") against Defendant.  (Compl. Ex H [notice of motion for default judgment]).   On September 3, 1991, this Court granted Plaintiff's motion, and a Default Judgment was entered by this Court for the liquidated amount of $134,396.45 plus interest of $4,838.44 and attorney's fees of $26,879.29, for a total $166,114.18.  (Compl. Ex. L [default judgment]).  Plaintiff registered the judgment with the United States District Courts for the Middle and Northern Districts of Georgia, and Writs of Execution were issued by both Courts on December 30, 1991 and filed with the Dougherty County Clerk of the Superior Court of Georgia on October 13, 1992, September 28, 1998, and September 19, 2005, and the Whitfield County Clerk of Court on October 15, 1992, October 13, 1998,

and October 10, 2005.  (Affidavit of Barbara Phipps, dated August 22, 2008 ("Phipps Aff."), Ex. B [Middle District of Georgia Writ of Execution], Ex. C [Northern District of Georgia Writ of Execution].)

**2. Defendant's Motion for Relief Under Rule 60(b)(4)**

On August 29, 2008, nearly seventeen years to the day after the default judgment was entered against her, Defendant brought a motion under Fed. R. Civ. Pro. 60(b)(4) to set aside the Default Judgment.  Defendant argues that the judgment entered against her must be vacated because this Court lacked personal jurisdiction over her at the time the judgment was entered.  (Def. Br. at 7-17.)[1]  Specifically, Defendant claims that she never signed the Guaranty, and therefore never agreed to appoint C-A Credit as her agent for service of process.  (Id. at 10-12.)  In the alternative, Defendant argues that even if she signed the Guaranty, the notice provided to her in 1991 of the pending action was insufficient to comply both with the terms of the Guaranty and her constitutional right to due process of law.  (Id. at 12-17.)  Each of Defendant's arguments will be considered in turn.

A. Legal Standard – Rule 60(b)(4)

A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service."  Polygram Merch., Inc. v. N.Y. Wholesale Co., 2000 U.S. Dist. LEXIS 166, at *3-4 (S.D.N.Y. 2000).  Where a judgment is "obtained in the absence of *in personam* jurisdiction," it is void, and therefore must be vacated.  China Mariners' Assur. Corp. v. M.T. W.M. Vacy Ash, 1999 U.S. Dist. LEXIS 2674, at *3 (S.D.N.Y. 1999); Kao

---

[1] In support of her motion to vacate the Default Judgment entered against her, Defendant filed a memorandum of law on August 26, 2008 ("Def. Br.").  Plaintiff responded to this memorandum on November 17, 2008 ("Pl. Br."), and on November 26, 2008, Defendant filed a reply memorandum ("Def. Reply").

Hwa Shipping v. China Steel Corp., 816 F. Supp. 910, 913 (S.D.N.Y. 1993); see also Triad Energy Corp. v. McNell, 110 F.R.D. 382, 385 (S.D.N.Y. 1986) (judgment obtained via defective service of process is void and must be vacated.)  This is because Federal Rule of Civil Procedure 60(b)(4) provides that judgments that are void must be set aside. Am. Inst. of Certified Pub. Accountants v. Affinity Card Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) ("a motion predicated on subsection four [of Rule 60(b)] is unique . . . in that relief is not discretionary.")

Further, while a Fed R. Civ. P. Rule 60(b)(4) motion must be made "within a reasonable time" after entry of the judgment, "courts have been exceedingly lenient in defining the term 'reasonable time,' with regard to voidness challenges." Beller & Keller v. Tyler, 120 F.3d 21, 24 (2d Cir. 1997).  In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void may be made at any time." Id.; see also Crosby v. The Bradstreet Co., 312 F.2d 483, 485 (2d Cir. 1963) (judgment vacated as void thirty years after entry).  Accordingly, even though this motion to vacate the default judgment was made approximately seventeen years after entry of the judgment, the motion is deemed timely.

B. Designation of C-A Credit As Defendant's Agent.

Defendant first argues that the Default Judgment entered against her is void because she never signed the Guaranty appointing C-A Credit of New York as her agent for service of process, and therefore, the Court lacked *in personam* jurisdiction over her at the time the judgment was entered.  (Def. Br. at 10-12.)  Defendant acknowledges that her signature appears to be on the Guaranty appointing C-A Credit as her agent, but she contends that this signature was forged.  Relatedly, Defendant argues that the designation

4

in the Guaranty of C-A Credit as her agent was improper because Plaintiff failed to execute the Guaranty in compliance with N.Y. Civil Practice Law and Rules ("CPLR") Section 318.

### 1. *Factual Allegations*

In her affidavit in support of her motion, Defendant claims that at "no time has [she] ever signed or been asked to sign a Guaranty of any loan obligation on behalf of [her] husband or his business interest." (Phipps Aff. ¶ 5.)  Moreover, she alleges that she never signed the Guaranty attached to Plaintiff's Complaint which made her the Guarantor of her husband's debts to Plaintiff and which appointed C-A Credit as her agent for service of process.  (Id. ¶ 6.)  Rather, Defedant asserts, her signature on that Guaranty was "forged."  (Id. ¶ 6.)  To buttress this claim, Defendant points out that the first name of the signature on the Guaranty is spelled "Barbra," instead of the correct spelling of "Barbara."  (Id. ¶ 7; Phipps Aff. Ex. A [Guaranty containing signature, "Barbra Phipps"].)

In response to Defendant's averments, Jean DeGrave, who serves as a Vice-President for Plaintiff, alleges that while Defendant's name is spelled incorrectly on the Guaranty she provided to the Court (Phipps Aff. Ex. A), Plaintiff's files contain a duplicate copy of the Guaranty that was executed on the same day the first Guaranty was signed.  (Affidavit of Jean DeGrave, dated September 24, 2008 ("DeGrave Aff."), ¶ 3; DeGrave Aff. Ex. 1 [Guaranty containing signature, "Barbara Phipps"].)  The signature on the duplicate Guaranty appears to be identical to that of the first Guaranty, except that it has Defendant's name correctly spelled.  (Id.)  Under both Guaranties, the Signatory agreed to "designate and appoint Stuart B. Glover, Esq., New York, New York, and C-A

Credit Corp., New York, New York, or either of them, as [her] true and lawful attorney-in-fact and agent for each of us and in our name, place and stead to accept service of any process within the State of New York…" (DeGrave Aff. ¶ 5; DeGrave Aff. Ex. 1.)  On April 12, 1991, service was effected here when Plaintiff personally served an officer of C-A Credit with a copy of the Summons and Complaint.  (DeGrave Aff. ¶ 7.)

In a reply-affidavit, Defendant denied signing the Guaranty that had her name spelled correctly and which had been produced by Plaintiff.  (Affidavit of Barbara Phipps ("Phipps Reply Aff."), dated November 21, 2008, ¶ 2.)  Defendant also produced an affidavit signed by Denise Dickson, the woman who had notarized both Guaranties and who was an employee of Dalton Truck Sales.  (Affidavit of Denise Dickson ("Dickson Aff."), dated November 24, 2008, ¶¶ 2, 4.)  There is no evidence submitted that Dalton Truck Sales was affiliated with Defendant or her husband, or that Dickson knew Defendant.  Dickson averred that during her employment at Dalton Truck Sales, she "notarized numerous documents at the request" of her employer, and that "many times these documents already bore the signing parties signature" when she notarized them.  (Id. ¶3.)  Hence, Dickson averred, she "did not always witness the execution of the documents by the signing party prior to notarizing the document," and that "at no time" did Dickson "ever witness Barbara Phipps execute the Guaranty document attached as Exhibit 'D' to Plaintiff's Complaint," which was the Guaranty bearing the misspelled name "Barbra Phipps."  (Id. ¶¶ 3, 5.)

   2. *Plaintiff's Allegations are Insufficient to Rebut the Presumption of Authenticity Accorded to Notarized Documents*.

Fed. R. Civ. Pro. 4(e) states that service of process may be effected either:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

As applicable to the first prong of Rule 4(e), service in New York State is governed by N.Y. CPLR § 308(3), which provides that service of process may be made upon an individual "by delivering the summons within the state to the agent for service of the person to be served as designated" under CPLR Section 318. Section 318, in turn, provides that:

A person may be designated by a natural person, corporation or partnership as an agent for service in a writing, executed and acknowledged in the same manner as a deed, with the consent of the agent endorsed thereon. The writing shall be filed in the office of the clerk of the county in which the principal to be served resides or has its principal office. The designation shall remain in effect for three years from such filing unless it has been revoked by the filing of a revocation, or by the death, judicial declaration of incompetency or legal termination of the agent or principal.

Thus, under both Rule 4(e)(1) and (2), service can be effected and *in personam* jurisdiction can be obtained by delivering a copy of the summons and complaint to an authorized agent. Here, Plaintiff states that it complied with this requirement by delivering a copy of the Summons and Complaint to C-A Credit, the agent authorized by Defendant's signature on the Guaranty. Defendant's response is that she never signed the Guaranty appointing C-A Credit as her agent, and therefore, she was not properly served and the Court never had *in personam* jurisdiction over her at the time the default

judgment was entered.  (Def. Br. at 10-12.)  See Orix v. Thunder Ridge Energy, 579 F.

Supp. 2d 498, at *9 (S.D.N.Y. 2008) ("a judgment entered against a defendant not

properly served should be vacated.")

        Both Guaranties allegedly signed by Defendant here were notarized, and under

New York law, which per the terms of the Guaranty applies here, see Walter E. Heller &

Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("New York courts

generally accord deference to choice-of-law provisions in contracts"), notarization of a

signature creates a presumption in law that the signature is authentic.  Orix v. Thunder

Ridge Energy, 2005 U.S. Dist. LEXIS 41889, at *36-37 (S.D.N.Y. 2005).  To rebut this

presumption, a plaintiff must present evidence that is not "of a doubtful character, such as

the unsupported testimony of interested witnesses, nor upon a bare preponderance of

evidence, but only on proof so clear and convincing as to amount to a moral certainty."

See Son Fong Lum v. Antonelli, 102 A.D.2d 260, 261 (N.Y. App. Div. 2d Dept. 1984),

aff'd, 64 N.Y.2d 1158 (1985); see also Thunder Ridge Energy, 2005 U.S. Dist. LEXIS

41889, at *40-41 (quoting Chianese v. Meier, 285 A.D.2d 315, 320 (N.Y. App. Div. 1st

Dept. 2001) ("a certificate of acknowledgment by a notary public gives rise to a

presumption of due execution that can only be rebutted upon a showing of clear and

convincing evidence to the contrary")); Orix v. Khoury, 1994 U.S. Dist. LEXIS 18634, at

*1 (S.D.N.Y. 1995) ("Notarization of a signature raises a presumption that the signature

is valid.  This presumption can be rebutted, however, after being compared against any

evidence adduced to show that the subject instrument was not duly executed.")

        Defendant here asserts that she has met this burden.  First, Defendant has denied

signing the Guaranties -- the one with the misspelled signature and the one with the

correctly spelled signature.  Next, Defendant argues that the existence of two Guaranties supports an inference that both Guaranties were forged.  Defendant surmises that the forger recognized that the first Guaranty contained an incorrectly spelled first name, and because of that, the forger then executed a second Guaranty with a correctly spelled name.  (Def. Reply at 6.)  Lastly, Defendant has presented an affidavit from Denise Dickson, the notary public who notarized both Guaranties on December 10, 1988. Dickson averred that when she worked at "Dalton Truck Sales, [she] notarized numerous documents at the request of [her] employer," and "many times these documents already bore the signing parties signature when [she] notarized the document.  Accordingly, [she] did not always witness the execution of the documents by the signing party prior to notarizing the document." Dickson further stated that "at no time did [she] ever witness Barbara Phipps execute the Guaranty" with the misspelled signature.  The question now presented is whether these allegations by Defendant sufficiently rebut the presumption of authenticity presented by a notarized signature.

The affidavits submitted by Defendant do not sufficiently rebut the presumption of authenticity presented by Defendant's notarized signature.  First, it is well-settled that a person's mere averment that she did not sign a guaranty bearing her name is in and of itself insufficient to overcome the presumption warrant vacating the default judgment. Thunder Ridge Energy, 2005 U.S. Dist. Lexis 41889, at *41; Osborne v. Zornberg, 16 A.D.3d 643 (N.Y. App. Div. 2d Dept. 2005); Demblewski v. Demblewski, 267 A.D.2d 1058 (N.Y. App. Div. 4th Dept. 1999); Antonelli, 102 A.D.2d at 260-61.

Next, while Defendant surmises fraud simply because there were two executed Guaranties, one bearing her first name spelled incorrectly and a second bearing a correct

9

spelling, in fact, the existence of these two documents is hardly suspicious.  Many companies standard practice is to have a Guarantor sign two copies of a Guaranty agreement.  And while Defendant points out that the name "Barbara" was spelled differently on both Guaranties, Defendant presents no evidence evincing that this was anything but an innocent or careless mistake done in haste.

Lastly are the notary public's averments concerning her general practices when she notarized documents and her specific recollection of not notarizing the Guaranty at issue here for Defendant.  Initially, Dickson's averment that she never witnessed Defendant sign the Guaranty containing the misspelled name ("Barbra") carries little weight.  Dickson denies witnessing the signing of one Guaranty, but she does not deny witnessing the signing of the duplicate Guaranty, which is identical to the first except that Defendant's name is spelled correctly.  More importantly, it is not believable without further substantiation that twenty years after allegedly notarizing a document, Dickson, who notarized "numerous documents at the request of [her] employer" (Dickson Aff. ¶ 3), would remember whether or not Defendant appeared before her during the notarization process.  Indeed, there is no evidence Dickson personally knew Defendant years ago, so that she would remember whether or not she notarized Defendant's form.

Dickson's averment that it was her usual practice not to witness the execution of documents by the signee prior to notarization raises doubts as to the authenticity of the signature on the Guaranty, but standing alone this averment is insufficient to rebut the strong presumption of authenticity of a notarized signature.  In that regard, there are no hard and fast rules governing exactly what quantum of proof is necessary to adequately rebut the presumption of authenticity of a notarized signature.  However, previous

examples where Defendants have challenged the authenticity of a notarized signature provide a guidepost.

In Thunder Ridge Energy, 2005 U.S. Dist. LEXIS 41889, in addition to the defendants' denial that they had signed the Guaranties, the defendants offered the affidavit of a handwriting expert who averred that the signatures on the respective guaranties did not match the authentic signature samples provided by the defendants. The court ruled that the defendants "offered evidence sufficient to rebut the presumption of authenticity accorded their notarized signatures." See also Lombardo v. United Techs. Corp., 1997 U.S. Dist. LEXIS 7651, at *2 (D. Conn. 1997) (in determining that the Plaintiff had overcome the presumption of validity accorded to a notarized signature, Court ruled that "while a notary public's certificate of acknowledgement, regular on its face, carries a strong presumption of validity, in light of [the defendant's] affidavit [that the signature was forged] and the expert's opinion that this is not her signature, the issue of the authenticity of plaintiff's signature is in dispute.")

More analogous to the present case, in Orix v. Roth, 2008 U.S. Dist. LEXIS 28554 (S.D.N.Y. 2008), the defendant denied signing the Guaranty and she provided "letters from her current and former supervisors who both state[d] that it [was] their opinion that the signature on the Guaranty" was not hers.  This proof was insufficient to overcome the presumption of authenticity accorded to the notarized signature.  Similarly, in Mendelsohn v. A&C Holding Co. (In re Piazza), 181 B.R. 19, 22 (Bankr. E.D.N.Y. 1995), the defendant failed to overcome the presumption of authenticity when she testified that the signature was not hers, and she provided the Court with several documents bearing her authentic signature for comparison.  Both the Roth and Piazza

courts, in declining to rule that the defendants had rebutted the presumption of authenticity accorded notarized documents, noted that the defendants had failed to present a handwriting expert who could testify regarding the authenticity of the documents' signatures.

Other evidence may rebut the presumption of authenticity of a notarized signature.  In Orix v. Khoury, 1994 U.S. Dist. LEXIS 18634 (S.D.N.Y. 1994), the defendant sufficiently rebutted the presumption of authenticity when he presented original receipts proving that he was abroad at the time when he allegedly signed the guaranty.  But unlike in Khoury, where the defendant submitted evidence that, if credited, demonstrated that he could not have signed the Guaranty, the evidence submitted by Defendant here is hardly as conclusive.  Indeed, Defendant's evidence boils down to her own denial that she was the signee, the existence of two nearly identical Guaranties that on their face appear to have been signed by the same person, and the notary public's statement that she did not always follow the correct procedures when notarizing documents.  This is insufficient to overcome the heavy presumption of authenticity afforded to notarized documents.

Accordingly, Defendant's motion to vacate based on her claim that she did not sign the Guarantee is denied without prejudice to a further application based on more conclusive evidence negating the authenticity of her signature.

3. Designation of C-A Credit as Defendant's Agent Under N.Y. CPLR § 318.

Defendant also argues that this Court lacked *in personam* jurisdiction over her because Plaintiff failed to comply with the provisions of N.Y. CPLR § 318 when the Guaranty was executed.  Specifically, Defendant argues that under New York law, the

Guaranty "must contain the signature of a witness in addition to that of a notary public." (Def. Br. at 11.)  Further, Defendant asserts, C-A Credit never signed the Guaranty as required, and there is no "proof in the record before the Court that the Guaranty was maintained in the county clerk's office as required by the statute."  (Id.)  Defendant's argument is rejected.

With the exception of challenging Defendant's claim that New York law governing the appointment of an agent for the service of process requires the signature "of a witness in addition to that of a notary public," Plaintiff here does not directly deny that it failed to comply with all the provisions of  NY CPLR § 318.  However this is of no import.  Under New York law, "it is well settled that parties to a contract 'may agree to service upon a third person with respect to litigation arising from the contract, even where that person is not an agent authorized under … CPLR 318.'" Orix Financial Services v. Kielbasa, 2007 U.S. Dist. LEXIS 88339, *7 (S.D.N.Y. 2007); Orix Financial Services v. 1st Choice Freight Sys., Inc., 2006 U.S. Dist. LEXIS 53394, at *8-9 (S.D.N.Y. 2006) (same); Orix v. Baker, 1 Misc. 3d 288 (Sup. Ct., N.Y. Co. 2003) (same). Indeed, this exact same claim raised by Defendant here was recently rejected by Judge Keenan in Kielbasa, 2007 U.S. Dist. LEXIS 88339 at *7.  Thus, C-A Credit was a valid agent for acceptance of service of process on Defendant's behalf despite non-compliance with CPLR Section 318.

C. The Notice Provided to Defendant

In the alternative, Defendant contends that even if she signed the Guaranty, she received no notice of this action sufficient to comport with due process so as to enable this Court to assert *in personam* jurisdiction.  (Def. Brief at 10, 12-17.)  Specifically,

Defendant claims that she never received any notice whatsoever of this action from C-A Credit, Plaintiff, or any other party, and as such, she has not been afforded due process sufficient for this Court to assert jurisdiction.  (Def. Brief at 12-13.)  Defendant also argues that even crediting Plaintiff's allegations as fact, Plaintiff failed to satisfy the prerequisite of notifying her of the pending action through a certified mailing with return receipt as Defendant argues that Plaintiff was required to do under the terms of the Guaranty.  (Def. Reply at 4-5.)

     1. *Factual Allegations*

     To support her claim that she received no notice of the action initiated against her by the Complaint in April of 1991, Defendant affirms that she had no involvement with her husband's business or the business' decision to borrow funds and incur debt.  (Phipps Aff. ¶¶ 4-5.)  Defendant also maintains that upon her alleged execution of the Guaranty, she never "received a letter or notification of any kind whatsoever from Orix … notifying [her] of their receipt of a guaranty purportedly executed" by her.  (Phipps Reply Aff. ¶ 3.) Defendant further averred that in 1991 she never received a copy of the summons, Complaint, or notification of any kind from any party (Phipps Aff. ¶ 8), that she never received a summons, complaint, or process at all at any time (Id. ¶ 9), and she "never received written, certified mailed notice of such service through the United States mails from Stuart B. Glover, Esq. or C-A Credit Corp. as required under the purported Guaranty."  (Id. ¶ 10.)  Lastly, Defendant affirms that she never appointed R. Scott Cunningham of Georgia as her attorney in this matter, and she never discussed this matter with him or received any mailings regarding this matter from him. (Id. ¶ 12.)

Cunningham, a disbarred Georgia attorney, has submitted an affidavit to the Court stating that in 1991 he was asked by Sarah Fleming, who was the wife of Stanley Fleming and who had allegedly signed a Guaranty similar to that of Defendant, to locate a New York attorney to represent her in the proceeding initiated in this Court.  (Affidavit of R. Scott Cunningham, dated July 25, 2008, ("Cunningham Aff."), ¶ 3.)  Cunningham then contacted Plaintiff's attorney and requested an extension of time to file a response for both Fleming and Defendant.  (Id. ¶ 4.)  Cunningham contends that he was not representing Defendant at that time, that he was never asked by Defendant to find her a New York attorney, and that he never discussed this matter with Defendant.  (Id. ¶ 7.)

In response to these allegations, Plaintiff submitted affidavits from Jean DeGrave and Lewis Smoley, Esq., Plaintiff's attorney at the time the Complaint was filed in 1991. The affidavits allege that on April 12, 1991, Defendant was served with a copy of the Summons and Complaint by personal service upon an officer of C-A Credit Corporation. (Degrave Aff. ¶ 7; Declaration of Lewis Smoley, dated November 3, 2008, ("Smoley Aff.") ¶ 6; Smoley Aff. Ex. 2 [service notice]).  Upon service on C-A Credit, an officer at C-A credit sent by first-class mail the Summons and Complaint to Defendant at her last presently known address -- 337 Marla Drive, Cohutta, GA 30710 -- which was the address listed on the Guaranty.  (Smoley Aff. ¶ 7; Smoley Aff. Ex. 3 [letter from C-A Credit to Defendant].)  On April 12, 1991, Orix also sent to Defendant at 337 Marla Drive, Cohutta, GA 30710, by "certified mail, return receipt requested" written notice of the "service of process" upon C-A Credit, "together with a copy of the Summons and Complaint."  (Degrave Aff. ¶ 7; Smoley Aff. ¶ 8; Smoley Aff. Exs. 4 [letter of notice], 5 [certified mail receipt].)  This letter was sent pursuant to the terms of the Guaranty, which

required Orix to "deposit[] in the United States mails, certified mail, postage prepaid, written notice of such service addressed to [Defendant] at [Defendant's] address shown" on the Guaranty.  (Degrave Aff. ¶ 7; Degrave Aff. Ex. 1 [Guaranty]).  An additional copy of the Summons and Complaint was mailed by first-class mail to Defendant at the same address and on the same day that the certified mailing was sent.  (Degrave Aff. ¶ 8; Smoley Aff. ¶ 8.)  Plaintiff's records "do not contain the green card receipt" for the certified mailing, and neither of the two first-class mailings have receipts indicating that they were mailed.  (Degrave Aff. ¶¶ 7-8.)

Plaintiff has also conducted an internet search to determine the address of defendant at the time process was served (April 12, 1991), and the results demonstrate that from at least 1989 through to 2004, Defendant resided at 337 Marla Drive, Cohutta, Georgia, 30710.  (Degrave Aff. ¶ 10; Degrave Aff. Ex. 5 [internet search records].) Degrave further avers that it is the regular practice of Plaintiff when a Guaranty has been signed to send to the Guarantor a letter by certified and first-class mailing advising them that Orix has received their Guaranty.  (Degrave Aff. ¶ 12.)  No copy of this letter has been located in the files of Defendant.  (Id.)  Lastly, after this Court granted Plaintiff's request for a default judgment, Smoley mailed a copy of the judgment to Defendant at the address listed on the Guaranty.  (Smoley Aff. ¶ 13; Smoley Aff. Ex. 9 [notice of default judgment].)

In late March or early April of 1991, after the Complaint was filed, Smoley avers that he received a phone call from R. Scott Cunningham.[2]  (Smoley Aff. ¶ 10.)  In this call, Cunningham advised Smoley that he represented both Defendant and Fleming in this

---

[2] Cunningham was disbarred in 2006 after he was convicted of money laundering.  (Smoley Aff. ¶ 14; Smoley Ex. 10.)

matter, and he requested an extension of time for both parties to file a response.  (Id.)

Smoley agreed to an extension, and on April 30, 1991, Cunningham sent Smoley a letter

confirming the extension of time.  (Smoley Aff. ¶ 12; Smoley Aff. Ex. 8 [letter].)  At the

bottom of the letter it was written "CC: Barbara Phipps."  (Id.)  On May 13, 1991,

Cunningham and Smoley both executed a stipulation to extend both Defendant's and

Fleming's time to file a response until June 3, 1991.  (Smoley Aff. ¶ 10; Smoley Aff. Ex.

6 [stipulation of adjournment].)   On that stipulation Cunningham's signature appears

above the words "Attorney for Defendants BARBARA PHIPPS and SARAH

FLEMING."  (Id.; Smoley Aff. Ex. 6) (emphasis in original.)  On June 18, 1991 Smoley

sent Cunningham a letter concerning another adjournment of time in this matter, and in

this letter Smoley referred to Cunningham as "local counsel" to Defendant and Fleming.

(Smoley Aff. ¶ 11; Smoley Aff. Ex. 7 [letter to Cunningham].)  Prior to this motion,

Cunningham never contradicted or corrected Smoley's statement that he was Defendant's

counsel in this matter.  (Id.)

   2. *Application*

      To satisfy the dictates of due process, there is "no rigid formula as to the kind of

notice that must be given [of a pending action]; notice required will vary with

circumstances and conditions."  Baker v. Latham Sparrowbush, 72 F.3d 246, 254 (2d Cir.

1995).  However, notice must be "reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

314 (1950); Luessenhop v. Clinton County, 466 F.3d 259, 269 (2d Cir. 2006).

In support of her claim that she was deprived of her constitutional entitlement to proper notice, the sum of Defendant's allegations consists of her own averment that she never received notice from any party that she had signed the Guaranty or that an action had been filed against her in the Southern District of New York.  But even accepting Defendant's entirely unsupported affidavit as truth, actual receipt of notice by a party is not required to satisfy the dictates of due process.  See Evans v. New York, 308 F. Supp. 2d 316, 325 (S.D.N.Y. 2004); see also Luessenhop, 466 F.3d at 269 (citing Mullane, 339 U.S. at 314, pronounced that the Supreme Court "did not go so far as to hold that due process require[s] that a property owner receive actual notice" before his property may be taken); Weigner v. New York, 852 F.2d 646, 649 (2d Cir. 1988) (inquiry for due process purposes is "not whether each property owner actually received notice.")

Rather, the relevant inquiry for due process purposes focuses on the party providing the notice, and asks whether that party has provided "notice reasonably calculated" to inform interested parties.  Weigner, 852 F.2d at 649 ("proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected").  And as applicable here, both the Supreme Court and the Second Circuit have ruled that under most circumstances notice "sent by ordinary mail is deemed reasonably calculated to inform interested parties" of an impending action.  See Weigner, 852 F.2d at 650 (citing Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 490 (1988); Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 (1983)).

Indeed, the Supreme Court has applied this rule -- that due process is satisfied upon the proper mailing of notice -- in a wide array of proceedings where a defendant's property rights are at issue.  See, e.g., Tulsa Professional Collection Services, 485 U.S. at

490 (notice to creditors in probate proceedings); <u>Mennonite Board of Missions</u>, 462 U.S. at 799-800 (notice of mortgagee of tax foreclosure); <u>Greene v. Lindsey</u>, 456 U.S. 444, 455 (1982) (notice to public housing tenants of forcible entry and detainer actions); <u>Schroeder v. New York</u>, 371 U.S. 208, 214 (1962) (notice of condemnation proceedings); <u>Walker v. Hutchinson</u>, 352 U.S. 112, 116 (1956) (notice of condemnation proceeding). As the Supreme Court pronounced in <u>Mullane</u>, 339 U.S. at 319, the mails are an "efficient and inexpensive means of communication" that generally may be relied upon to deliver notice where it is sent.

Applying these governing principles here, the address printed on the Guaranty underneath Defendant's purported signature was "337 Marla Drive, Cohutta, GA 30710." On April 12, 1991, the day the Complaint was filed in this Court, Plaintiff sent Defendant, at the aforementioned address, a copy of the Summons and Complaint by both first-class and certified mail return receipt requested. Also that day, Plaintiff delivered a copy of the Summons and Complaint to C-A Credit, the agent appointed by the Guaranty, who then mailed a copy of the service documents to Defendant by first-class mail. In total, one copy of the Summons and Complaint was sent by certified mail and two copies of the documents were sent by first-class mail to Defendant at her last known address, which was the address printed on the Guaranty.

Moreover, there is every reason to believe that the address printed on the Guaranty was the address at which Defendant lived and received mail at the time the notice here was provided. A computer check evinces that Defendant lived at that address from at least 1989 to the present day. Further, and most importantly, Defendant has never denied in either of the two affidavits she presented to this Court that she lived and

received mail at 377 Marla Drive, Cohutta, GA 30710, the address to which notice was repeatedly sent, at the time when C-A Credit and Plaintiff sent it.  Additionally, on the same date the Guaranty was executed in 1988, Defendant's husband signed an assignment deed, the authenticity of which is uncontested, transferring his debt from Kenworth to Orix.  (Smoley Aff. Ex. B [notice of assignment].)  The address Defendant's husband provided on the assignment was the same address printed on the Guaranty and the same address to which the three notices were sent.  (Id.)  Lastly, Plaintiff's files have no indication that any of the three sent letters had been returned to the sender.  See Miner v. Clinton County, 541 F.3d 464 (2d Cir. 2008) (due process deemed satisfied where notice, which had been sent by certified mail, was never returned to defendants); cf. Jones v. Flowers, 547 U.S. 220, 225 (2006) (due process not satisfied where certified mail was returned by the post office as undelivered).[3]

Given these circumstances, the notice sent by Plaintiff and C-A Credit was reasonably calculated to give notice to Defendant of the lawsuit filed against her in federal court, and therefore, comported with the due process principles of the Constitution.  See Silver Top v. Monterey Indust., 1995 U.S. Dist. LEXIS 1981, at *5-6 (S.D.N.Y. 1995) ("service by registered mail to Defendants' addresses as they appeared on file with the Registry was reasonably calculated to give notice under all of the circumstances and, therefore, was constitutionally valid"); see also Kielbasa, 2007 U.S. Dist. LEXIS 88339, at *9 (requirements of due process are deemed met when the 'agent'

---

[3] Of course, this is not to say that sending notice by mail to a Defendant always comports with due process. Rather, in some special circumstances, mailed notice may be inadequate.  For example, as the Second Circuit explained in Weigner, 852 F.2d at 650 fn. 4, where the state knows that a party does not reside at the mailing address, Robinson v. Hanrahan, 409 U.S. 38 (1972), or where the recipient is known to be someone who could not understand the mailing, Covey v. Town of Somers, 351 U.S. 141 (1956), due process may require something more than just mailing notice to the address on file.  No such special circumstances are claimed to exist here.

promptly accepts the summons of process, and promptly transmits it or notice thereof to the principal.")

And while Defendant contends that she was constitutionally entitled to notice that confirmed that she had received the mailings, the law in this Circuit is clear that "actual receipt of notice that is properly mailed" is not required to fulfill the dictates of due process.  Weigner, 852 F.2d at 650 (citing Schroeder, 371 U.S. at 213 (ruling that duty to notify property owner of condemnation proceeding was "an obligation which the mailing of a single letter would have discharged"); see also Miner, 541 F.3d at 471-72 (affirming Court's earlier holding in Weigner).  Indeed, at the very least, proof that a letter was mailed, which Plaintiff presented here, creates a presumption that the letter reached its destination and was received by the addressee.  See Orix Credit Alliance v. Mahnen, 1993 U.S. Dist. LEXIS 7071, at *25 (S.D.N.Y. 1993) ("it is well-settled that proof that a letter was mailed creates a presumption that the letter reached its destination and was actually received by the person to whom it was addressed"); see also Akey v. Clinton County, 375 F.3d 231, 235 (2d Cir. 2004) (presumption of receipt applies to properly addressed letters mailed in accordance with regular office procedures.)

Here, in attacking the presumption of regularity afforded to properly mailed letters, Defendant alleges that she never received the notice thrice-mailed in 1991.  Further, Defendant contends that the fact that Plaintiff cannot find in its files the verification letter it probably had sent to Defendant after she signed the Guaranty in 1988 makes it "highly doubtful" that three years later, notice was properly mailed.  (Def. Reply at 6-7.)  But "denial of receipt of notice, without more, is insufficient to rebut the presumption that notice was properly delivered through the mail."  Meckel v. Continental

21

Resources Co., 758 F.2d 811, 817-18 (2d Cir. 1985).  Additionally, while Defendant highlights the fact that the Company could not locate a twenty-year old letter in its files that might or might not have been created, the Company was successful in locating definitive proof that it had mailed notice of the proceedings to Defendant by certified mail in 1991, thus extinguishing any "doubt" that it had properly mailed notice.[4]

The cases relied upon by Defendant to show that she had not been afforded proper notice here are distinguishable.  (Def. Br. at 14-15.)  In Orix v. First Choice Freight, 2006 U.S. Dist. LEXIS 53394, at *4 (S.D.N.Y. 2006), C-A Credit did not mail notice to the address listed in the guaranty, but to a "seemingly incorrect address which had been provided by Orix."  Here, both C-A Credit and Orix sent notice and service papers to Defendant at the address she had provided in her Guaranty, which, as explained, was in all likelihood the address at which she lived at the time notice was provided.

And in Kielbasa, 2007 U.S. Dist. LEXIS 88339, at *3, Judge Keenan held that the due process requirements were met when the plaintiff and C-A Credit mailed the Summons and Complaint by certified mail to the defendant.  In rendering his decision, Judge Keenan added that the defendant did not directly deny in his affidavit that he did not have notice of the action.  Defendant here takes this to mean that merely denying in the affidavit that she had received notice of the suit is sufficient to rebut the presumption that notice had been provided.  However, this is not the holding of Kielbasa, and further, Judge Keenan cited in his holding to Orix v. Hamrick, 1991 U.S. Dist LEXIS 3132, at

---

[4] Due process was further satisfied because the totality record evinces that Defendant had retained a lawyer, and that her lawyer had communicated with her concerning this case.  See, e.g., Espinal v. United States, 2007 U.S. Dist. LEXIS 92063 (S.D.N.Y. 2007) ("sending notice to an attorney who represents a defendant … may satisfy due process"); see also Bye v. United States, 105 F.3d 856, 857 (2d Cir. 1997) ("the notice sent to Bye's attorney was reasonably calculated, in the circumstances, to apprise Bye of the pendency of the administrative forefeiture proceeding and to afford him an opportunity to present his objections.")  The retention of an attorney who was communicating with Plaintiff clearly put Defendant on notice of the proceedings.

*11 (S.D.N.Y. 1991), where due process was fulfilled because "Plaintiff … complied with the specific provisions of the Guaranty" by serving the registered agent and mailing notice of service via registered mail to defendant along with a copy of the summons and complaint.  The circumstances of Hamrick are similar to those presented here.

Lastly, Defendant argues that the lack of any return receipts in Plaintiff's file proving that the Summons and Complaint were actually received by Defendant "cast serious doubt on whether Plaintiff fulfilled the requirements of the Guaranty by notifying Defendant Phipps of the pending action through a certified mailing of written notice of service …" (Def. Reply Brief at 4.)  However, under the terms of the Guaranty, Orix agreed to provide notice by "depositing in the United States mails, by certified mail, postage prepaid, written notice of such service addressed to us at our address shown hereinbelow …" (DeGrave Aff. Ex. 1 [Guaranty]).  Here, Plaintiff presented proof that it sent by certified mail a copy of the Summons and Complaint to the address printed on the Guaranty, thereby complying with the terms of the Guaranty.  The Guaranty says nothing about how service would be incomplete until the sender received a return receipt card back in the mail.  Indeed, if it were the case that such receipts were required, a debtor could thwart service merely by refusing to accept a letter mailed by a creditor.

Accordingly, Defendant was afforded notice that sufficiently comported with due process.  Further, in sending Defendant a copy of the Summons and Complaint by certified mail, Plaintiff complied with the terms of the Guaranty.

### 3. Conclusion

For the foregoing reasons, Defendant's motion to vacate the default judgment entered against her on September 3, 1991 is denied.

IT IS SO ORDERED.

Dated: New York, New York
      January 6, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order Were Faxed To:

**For Plaintiff**
Lewis M. Smoley
Davidoff & Malito & Hutcher, LLP
605 Third Avenue, 34th Floor
New York, NY 10158
Fax: 212-286-1884


**For Defendant**
Charles W. Smitherman, III
The McCurry Law Firm
402 N. Selvidge Street
Dalton, GA 30720
Fax: 706-279-1183